UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| TOMMY'S TOWING, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CANDIDO'S INC., *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil No. 6:25-cv-00063-GFVT <br><br> **OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on a Motion to Dismiss filed by Defendants Smith, Foley, and Kentucky State Police [R. 12], and joined separately by Defendant Candido's Inc. [R. 14.] In the Defendants' view, the Plaintiff has failed to adequately plead a claim upon which relief can be granted. For the reasons that follow, the Motion to Dismiss filed by Defendants Kentucky State Police, Smith, and Foley **[R. 12]** and the Joinder to the Motion filed by Defendant Candido's Inc. **[R. 14]** are **GRANTED**.

I

When a semi-truck is involved in an accident, the resulting aftermath can have a significant impact on traffic across the Commonwealth and beyond. To ensure prompt clean-up of such accidents, the Kentucky State Police relies upon private companies to provide specialized semi-truck towing services. As stated by KSP, the purpose of this policy is to "restore the free flow of traffic through safe and quick removal of damaged or disabled vehicles from streets and highways." Ky. State Police Gen. Order OM-B-13. When such an accident occurs, KSP officers call in towing companies from a rotating list to provide the towing services required to remove

the wrecked semi-truck from the scene. After a towing service is called from the top of the list, the KSP must move that towing provider to the bottom of the rotating list. [R. 1 at 3.]

Plaintiff Tommy's Towing, LLC, is one of the semi-truck towing services who works with the KSP. [*Id*.] Tommy's Towing is based in Whitely County, Kentucky, and operates within the Eastern District of Kentucky. [*Id*.] Tommy's Towing alleges that officers of the Kentucky State Police have disregarded the procedure for rotating the towing providers. More specifically, they contend that Officers Briston Smith and Dwayne Foley "consistently circumvent this process of ensuring a fair market by calling in Defendant Candido's Inc., multiple times in a row, particularly for the towing of semi-trailer ("big truck") towing without moving Candido's to the bottom of the list." [*Id*. at 3-4.] Candidos Inc. is a competitor of Tommy's Towing, with its principal place of business in Pulaski County, Kentucky. [*Id*. at 2.] Tommy's Towing further alleges that "[t]he Defendants achieve this by asserting that the owner of the semi-trailer truck has requested the use of Defendant Candido's Inc. towing service without the owner ever actually requesting the use of Defendant Candido's towing service." [*Id*. at 4.]

As a result of these practices, Tommy's Towing alleges that it has "missed out on numerous $50,000 or more towing jobs," because they "did not receive several semi-trailer truck jobs that Defendant Kentucky State Police would have assigned had they gone in the order they were required to go in." [Id. at 4.] Consequently, Tommy's Towing has brought the present suit alleging that the Defendants' activities "highlight [sic] an intent to monopolize and to eliminate competition from other towing service companies," in violation of Section 2 of the Sherman Antitrust Act. [Id.] Plaintiffs seek declaratory and injunctive relief, compensatory damages in an unspecified amount, and attorney's fees, costs, and expenses. [Id. at 6-7.]

2

Defendants Smith, Foley, and Kentucky State Police filed a Motion to Dismiss on June 18, 2025, pursuant to Fed. R. Civ. P. 12(b)(6). [R. 12.] Subsequently, on July 9, 2025, Defendant Candido's Inc. filed a Joinder in the other Defendants' Motion to Dismiss, likewise seeking dismissal on the basis of Fed. R. Civ. P. 12(b)(6). [R. 14.] These motions are now ripe for review.

## II

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide grounds for his requested relief that are more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of cause of action will not do." *Id*.

To review a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2007). The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint that pleads facts that are consistent with but not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (quoting *Twombley*, 550 U.S. at 556). The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim. *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).

3

**A**

The Defendants first contend that dismissal under Rule 12(b)(6) is appropriate here because Tommy's Towing has failed to adequately plead a viable Section II claim in their Complaint. Although the overarching guidelines of *Twombly* and *Iqbal* are equally applicable in the antitrust context, antitrust claims are subject to slightly heightened pleading standards. *Kitchens v. Nat'l Bd. of Med. Exam'rs*, 2025 U.S. Dist. LEXIS 14535, at *14-15 (E.D. Ky. Jan. 28, 2025). "The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal." *Foundation for Interior Design Educ. Research v. Savannah College of Art & Design*, 244 F.3d 521, 530 (6th Cir. 2001). Further, demonstration of a viable antitrust claim requires the plaintiff to show a defendant's actions have harmed competition writ large, not just an individual competitor. *Kitchens*, 2025 U.S. Dist. LEXIS 14535, at *15 (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)). This consists of a two-step process.

First, to present a viable Sherman Act claim, the plaintiff must define the relevant market in which the harm to competition has occurred. *CBC Cos., Inc. v. Equifax Inc.*, 561 F.3d 569, 572 (6th Cir. 2009) (dismissing a Sherman Act claim because the "complaint fails to allege key facts to substantiate an antitrust injury – that is, that competition in the [relevant] market decreased due to [defendant's conduct]"). The Plaintiff bears the burden of defining the relevant market. *Worldwide Basketball & Sport Tours, Inc. v. Nat'l Collegiate Athletic Ass'n*, 388 F.3d 955, 962 (6th Cir. 2004) (defining the relevant market inquiry as the "market within which the alleged anticompetitive effects of the defendant's actions occur"). Dismissal is proper where a plaintiff fails to identify a relevant market. *Nat'l Hockey League Players' Assoc. v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 719-20 (6th Cir. 2003).

Next, once the plaintiff has properly defined the effected market, he next must show "that the defendant has engaged in anticompetitive conduct capable of harming competition." *Kitchens*, 2025 U.S. Dist. LEXIS 14553 at *19 (citing *Spirit Airlines, Inc. v. Northwest Airlines, Inc.*, 431 F.3d 917, 932 (6th Cir. 2005)). Anticompetitive conduct is that which is "reasonably capable of creating, enlarging, or prolonging monopoly power by impairing the opportunity of rivals" and fails to "benefit consumers at all." *J.B.D.L. Corp. v. Wyeth-Ayerst Lab'ys Inc.*, 2005 U.S. Dist. LEXIS 11676, at *12 (S.D. Ohio June 13, 2005).

Turning, then, to Plaintiff Tommy's Towing's Complaint, it is clear that they have failed to adequately plead an actionable claim for violating Section II of the Sherman Act. As the Defendant's pointed out in their motion, "[c]onspicuously absent from the Complaint are any allegations concerning dates, times, places, alleged means of communication, or any other specific facts that would raise the allegations in the Complaint to something more than mere speculation." [R. 12 at 5.] Even assuming, arguendo, that Plaintiff has adequately defined the relevant market as "towing services in the Eastern District of Kentucky," there are simply no facts pled to underpin the accompanying legal assertions. [R. 1 at 6.]

Let's begin by examining the surprisingly brief "allegations of fact" portion of Plaintiff's Complaint. The Plaintiff simply alleges that Officers Smith and Foley bypassed the requisite Kentucky State Police policy for rotating tow companies, instead calling Candido's rather than the next company "on deck" in the rotation. [*Id*. at 3-4.] Plaintiff further alleges that the officers did so by claiming that the owners of stranded vehicles specifically requested Candidos, when they in fact did not. [*Id*. at 4.] And, as a result, the Plaintiffs lost out on several jobs that they would have otherwise been called to complete. [*Id*.] What is conspicuously absent however, is a single fact to indicate when these alleged episodes of misconduct actually took place, or where

they took place. Nor is there any evidence whatsoever that the Plaintiff, rather than any other tow company, would have otherwise been entitled to respond to the call by being "next on the list."

Furthermore, while not a fatal issue, the Plaintiff's Complaint does not mention or cite a single statute or administrative regulation pertaining to the rotating list of towing companies. Consequently, it is nearly impossible to determine the nature of the injury alleged without any clarity as to what state statute or administrative regulation was violated. It merely contains a single paragraph stating that calls are based on a rotating list and that, [a]fter one towing service is called, a KSP officer is required to move that towing service to the bottom of this list and call the next company in line for the next accident." [*Id*. at 4.] Without more, it is largely unclear whether the Kentucky State Police, or its officers, violated a statute or a regulation, let alone effectuated a violation of the Sherman Act. It is equally unclear whether the purported pattern of bypassing other companies in favor of Candido's was done pursuant to a policy, written or unwritten, with the State Police.

With respect to Defendant Candido's, the Complaint is even more deficient. The Plaintiff attempted, at least, to allege misconduct on the part of the Kentucky State Police, by and through the actions of Officers Smith and Foley. Put simply, Plaintiffs plead no wrongdoing on the part of Candido's. It does not allege that the State Police officials acted at Candido's direction, or that Candido's played any role in the scheme whatsoever, other than merely responding to a towing service call from the State Police. The fact that Plaintiff baldly contend that Candido's acted "via collusion and civil conspiracy," does not remedy the issue. [*Id*. at 5.] Allegations of a civil conspiracy in which Candido's played a part amount to sheer speculation. In the absence of any facts of wrongdoing on the part of Candido's, the Plaintiff has effectively

6

just recited the elements of an antitrust claim against a competitor, without any supporting factual assertions to demonstrate a plausible claim. This is insufficient.

Plaintiff contends that *Twombly* and *Iqbal* did nothing to disrupt the prior regime of "notice pleading." This is a fair observation; as the Sixth Circuit has clarified, "it would be 'inaccurate to read [*Twombly* and *Iqbal*] so narrowly as to be the death of notice pleading and we recognize the continuing viability of the "short and plain" language of Federal Rule of Civil Procedure 8.'" *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (quoting *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012). Nevertheless, *Twombly* and *Iqbal* still require a "plausibility" standard "for assessing whether a complaint's factual allegations support its legal conclusions." *Id*. at 610. Thus, "although the Amended Complaint need not present 'detailed factual allegations,' it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,'" could reasonably infer that the Defendant(s) committed the purported violation of law. Thus, put differently, while *Twombly* and *Iqbal* did not eliminate the "notice pleading" standard under Rule 8(a)(2), a Complaint must still consist of more than "naked assertion[s] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Considering the slightly heightened pleading standard applicable in antitrust litigation, Tommy's Towing has failed to adequately plead a Sherman Act violation, upon which relief can be granted. Plaintiff's complaint, as currently pleaded, lacks clearly articulable facts of an antitrust violation by any of the Defendants, the absence of which renders Plaintiff's terse allegations insufficient to survive the 12(b)(6) motions. While the *Twombly* and *Iqbal* pleading standard remains a generally low bar, a Plaintiff cannot surmount this requirement through bald

7

speculation accompanied by a bare recitation of the requisite elements of the underlying offense. Consequently, dismissal of Tommy's Towing's single-count complaint is proper.

B

Even if Tommy's Towing pled a viable claim, Defendants further contend that their challenged practices are exempt from the Sherman Act under the so-called "state action" immunity doctrine first set forth in *Parker v. Brown*, 317 U.S. 341 (1943). Under Section II of the Sherman Act, it is unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or within foreign nations…" 15 U.S.C. § 2. The Court, in *Parker*, concluded

> nothing in the language of the Sherman Act or in its history … suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature. In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.
>
> The Sherman Act makes no mention of the state as such, and gives no hint that it was intended to restrain state action or official action directed by a state. The act is applicable to "persons" including corporations …

*Parker*, 317 U.S. at 351. Put differently, then, the *Parker* doctrine "exempts 'anticompetitive conduct engaged in as an act of government by the state as sovereign, or, by its subdivisions, pursuant to state policy to displace competition with regulation or monopoly public service' from Sherman Act control." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 442 F.3d 410, 440-41 (6th Cir. 2006) (quoting *City of No. Olmsted v. Greater Cleveland Reg'l Transit Auth.*, 722 F.2d 1284, 1287 (6th Cir. 1983)). It is also well established that there is not a conspiracy

8

exception to the *Parker* state-action doctrine. *City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365, 374 (1991).

There is a sole recognized exception to the broad immunity of the state-action doctrine, insofar as it applies to states as sovereigns: "if a state acts as a 'commercial participant in a given market,' action taken in a market capacity is not protected." *VIBO Corp. v. Conway*, 669 F.3d 675, (6th Cir. 2012). A state acts as a market participant, rather than as a sovereign entity, where it acts, "in a proprietary capacity as a purchaser or seller with regard to the challenged action" or its actions "constitute [sic] direct state participation in the market." *Huish Detergents, Inc. v. Warren Cnty.*, 214 F.3d 707, 714-15 (6th Cir. 2000) (quoting *White v. Mass. Council of Constr. Emp'rs, Inc.*, 460 U.S. 204, 208 (1983)). Merely labeling its actions as an "agreement," does not mean that a state automatically becomes a market participant. *Id*. at 715. In the absence of the market participant exception, however, "any action that qualifies as state action is '*ipso facto* exempt from the operation of the antitrust laws.'" *Omni Outdoor Advert.*, 499 U.S. at 379 (quoting *Hoover v. Ronwin*, 466 U.S. 558, 568 (1984)).

If *Parker* state-action immunity shields the state from suit in a given case, it may also extend to certain private actors acting within the anti-competitive scheme orchestrated by the state. Put differently, "[w]here a state enters into an agreement with private entities and is protected by state-action immunity, that immunity extends to the private entities with whom the state deals." *VIBO Corp.*, at 669 F.3d at 686 (citing *S. Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 56-57 (1985)). *Parker* immunity can extend to the actions of a private entity, if that private entity's actions (1) are taken pursuant to affirmatively expressed state policy; and (2) are actively supervised by the State. *Calif. Retail Liquor Dealers Ass'n v.*

9

*Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980); *FTC v. Phoebe Putney Health Sys.*, 568 U.S. 216, 225 (2013).

Yet, despite this well-defined framework, the seemingly broad scope of *Parker* immunity substantially narrows around the question of who qualifies as a "sovereign" within the scope of its protection. Put differently, the much more difficult question is: whose conduct is considered state action and thus shielded by *Parker* immunity? While this question is "somewhat similar" to the analysis of state action under Section 1983 and the Fourteenth Amendment, it is "by no means identical." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 194 n.14 (1988); see also *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 254 (3d Cir. 2001) ("'State action,' as defined in cases granting *Parker* immunity, is qualitatively different from 'state action' in other contexts such as the Fourteenth Amendment"). The Sixth Circuit, for example, determined that the same actions of the Tennessee Secondary School Athletic Association were appropriately characterized as state action under the First Amendment and § 1983, but not "state action" for purposes of *Parker* immunity. Compare *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 291 (2007), with *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 442 F.3d 410, 440 (6th Cir. 2006).

When a state legislature, or a state supreme court, takes action to restrict free market competition, those actions are entitled to *ipso facto* immunity under *Parker* without the need for further analysis. The same *ipso facto* immunity applies to actions by the state supreme court, when performing a legislative-type function. *Bates v. State Bar of Ariz.*, 433 U.S. 350 (holding that the enactment of a rule of professional responsibility by the Arizona Supreme Court restricting advertising by attorneys was shielded from antitrust liability by *Parker* immunity); *N.C. State Bd. of Dental Exam'rs v. FTC*, 574 U.S. 494, 504 (2015) (affirming *Bates*); *Berger v.*

*Cuyahoga County Bar Ass'n*, 983 F.2d 718, 722 (6th Cir. 1993) (nearly identical claim to *Bates*). There is significant uncertainty as to whether the same *ipso facto* immunity applies to state executive officials, and the Supreme Court has not directly addressed the question in prior Parker immunity cases. See e.g., *Hoover v. Ronwin*, 466 U.S. 558, 568 n. 17 (1984) (passing on the question of whether a state's Governor was "in the same position as the state legislature and supreme court" for *Parker* immunity analysis). The First and Ninth Circuits have concluded that executive branch actors are afforded the same immunity under *Parker* as legislatures and supreme courts. *Charley's Taxi Radio Dispatch v. SIDA of Haw., Inc.*, 810 F.2d 869, 876 (9th Cir. 1987) ("state executives and executive agencies, like the state supreme court, are entitled to *Parker* immunity for actions taken pursuant to their constitutional or statutory authority, regardless of whether these particular actions or their anticompetitive effects were contemplated by the legislature"); *Neo Gen Screening, Inc. v. New England Newborn Screening Program*, 187 F.3d 24, 29 (1st Cir. 1999). The Sixth Circuit has taken a narrower approach, finding only that the actions of state Attorneys General are entitled to this *ipso facto* immunity. *VIBO Corp.*, 669 F.3d 675, 687 (6th Cir. 2012). All this points to the conclusion that a very narrow scope of actors – state legislatures, state supreme courts, and state Attorneys General – are automatically immune from suit by virtue of their sovereignty under *Parker*.

Further nuance arises in determining whether the actions of a state agency are shielded by *Parker* immunity. Unlike the actions taken by legislatures and state supreme courts, a state agency is not automatically immune from suit by virtue of their status. *N.C. State Bd. of Dental Exam'rs*, 574 U.S. at 503 (noting that state agencies "are not simply by their governmental character sovereign actors for purposes of state-action immunity"); see also *Southern Motor Carriers*, 471 U.S. at 61 ("for purposes of the *Parker* doctrine, not every act of a state agency is

that of the state as sovereign"). Rather, the Court noted "[i]mmunity for state agencies, therefore, requires more than a mere façade of state involvement, for it is necessary in light of *Parker*'s rationale to ensure the States accept political accountability for anticompetitive conduct they permit and control." *N.C. State Bd. of Dental Exam'rs*, 574 U.S. at 505. Elaborating further, the Court stated,

> [l]imits on state-action immunity are most essential when the State seeks to delegate its regulatory power to active market participants, for established ethical standards may blend with private anticompetitive motives in a way difficult even for market participants to discern. Dual allegiances are not always apparent to an actor. In consequence, active market participants cannot be allowed to regulate their own markets free from antitrust accountability.

*Id*. at 505-06. And, to determine whether the actions by the agency in *North Carolina State Board of Dental Examiners* were properly attributed to the state as sovereign, the Court applied the two-part test from *Midcal*. *Id*. at 506.; see also *id*. at 510 ("State agencies controlled by active market participants, who possess singularly strong private interests, pose the very risk of self-dealing *Midcal*'s supervision requirement was created to address"). Some circuits, following the *North Carolina State Board of Dental Examiners* decision, have held that when their actions are not controlled by private parties, they need not satisfy the second prong of *Midcal* – that they be subject to the active supervision of the state – in order to be afforded *Parker* immunity. See e.g., *Spec's Family Partners, Ltd. v. Exec. Dir. Of the Tex. Alcoholic Bev. Comm'n*, 972 F.3d 671, 683 (5th Cir. 2020). The Sixth Circuit, however, has not squarely addressed this question.

Nevertheless, what is clear is that, at a minimum, the state agency must act within the confines of "a clearly articulated and affirmatively expressed state policy" in order for its actions to be imputed as those of the state as sovereign, and thus immune under *Parker*. And, depending upon the nature and scope of the private actors within the scheme, there may be an additional

12

inquiry as to whether the agency is sufficiently "actively supervised" by the state before being afforded immunity. Either way, a state agency is not automatically afforded immunity under *Parker* sheerly by being named as a defendant in a federal antitrust suit. The agency must, at a bare minimum, act pursuant to a clearly articulated and affirmatively expressed state policy – for example, a state statute or rule enacted by the state supreme court – to come within *Parker*'s scope.

In view of this, the Court can safely conclude that there is insufficient evidence presented to determine whether the Defendants are shielded from suit by virtue of *Parker* immunity. First, it is worth observing that the facts of this dispute are quite irregular when compared alongside the overwhelming majority of cases in *Parker* doctrine jurisprudence. In the majority of those cases, a state government undertook action, generally by enacting legislation, which impaired free trade in the jurisdiction at the expense of the free market. These are policy assessments, by which the elected or appointed policymakers in the state's legislative or judicial branches make such an assessment as a matter of public policy. And *Parker* acknowledges that the Sherman Act was not designed to restrict state officials from making such policy judgments. Here, however, Tommy's Towing does not claim that the regulatory scheme at issue – the rotating tow list – is itself a violation of the Sherman Act. Rather, it claims that the failure of officers within the State Police to properly adhere to the policy regarding the list constituted an antitrust violation. Thus, unlike many *Parker* immunity cases, the issue here is not whether the state's statute, or acts taken pursuant to the statute, unlawfully restrain trade but rather whether their failure to adhere to a program does. Tommy's Towing argues, in contrast, that the State Police policy requiring a rotating list of towing companies *promotes*, rather than inhibits, reasonable fairness and equity among competitors in the towing market. The result of the State Police

policy, then, is not a monopoly; instead, it is more closely resembles a state-controlled oligopoly, or something akin to a monopsony. Consequently, because what we are dealing with here is not the enactment of an unlawful scheme by the legislature, or the carrying out of an unlawful regulatory scheme, but a failure to adhere to a scheme which actually promotes a fair distribution of calls among eligible competitors in the market, much of the existing precedent is inapposite.

Second, and perhaps more importantly, inadequate information has been presented to the Court regarding the rotating tow list policy. Based on the information contained in the pleadings, it remains altogether unclear what rules or regulations govern the State Police's rotating towing list. For example, it is unclear whether there is a statutory basis upon which the State Police have developed the rotating tow list, or whether the rotating tow list itself is the byproduct of a formal set of regulations. And, in the absence of a "clearly articulated and affirmatively expressed" state policy – either by virtue of the legislature's enactment of statutes, or otherwise – *Parker* immunity cannot attach to the state agency or its officers. Conversely, it is equally unclear whether the State Police's alleged practice of failing to adhere to the rotating tow list is a biproduct of a "clearly articulated and affirmatively expressed" state policy. Thus, no matter how you define the relevant policy requiring articulation – i.e., either the State Police rotating tow policy or the State Police's alleged practice of circumventing the list – there is simply no showing that the policy is "clearly articulated" or "affirmatively expressed."

Nor can *Parker* immunity attach to Candido's – a private actor – for the same reason. Doubly fatal to Candido's assertion of *Parker* immunity is the fact that there is also no information about how the state actively supervises the rotating tow list contained in the pleadings. As a private actor, this an essential prerequisite to *Parker* immunity attaching to Candido's, and potentially also to the State Police depending upon the yet-unaddressed question

14

as to the scope and extent of Candido's alleged role in this scheme. As a result, the Court cannot determine, based upon the information presented, whether *Parker* immunity attaches to any of the Defendants at this juncture in the case.

To briefly summarize, the *Parker* state action immunity doctrine recognizes that the state, as a sovereignty, may lawfully enact statutes and programs which displace the free market in exchange of another policy objective. Yet, the actions of state agencies are not entitled to the same *ipso facto* immunity as the sovereign state itself under *Parker*. What is required, at a bare minimum, is that the agency acted pursuant to a "clearly articulated and affirmatively expressed" state policy. Based on the information presented to the Court, there is simply no information as to whether the State Police's rotating tow list, or its practice of bypassing certain competitors on the list, are adequately articulated under the first prong of *Midcal*. Thus, although the Court dismisses Tommy's Towing's complaint for failure to adequately plead a claim, it cannot be dismissed with prejudice because there is insufficient evidence to indicate that any Defendant is immune under *Parker*.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Motion to Dismiss filed by Defendants Kentucky State Police, Briskin Smith, and Dwayne Foley **[R. 12]** is **GRANTED**;

2. The Joinder in Motion to Dismiss filed by Defendant Candido's Inc. **[R. 14]** is **GRANTED**;

3. Plaintiff Tommy's Towing's Complaint **[R. 1]** is **DISMISSED** without prejudice for failure to state a claim under Rule 12(b)(6).

This the 24th day of February 2026.

Gregory F. Van Tatenhove
United States District Judge